

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**IN THE MATTER OF THE SEARCH OF:**

(1)   Premises Located at 2049 Route 32, Sykesville, Maryland 21784; and

(2)   E-mail account jadminc@msn.com, hosted by Microsoft

**IN THE MATTER OF THE SEIZURE OF:**

(1)   Up to $240,834.26 in Bank of America, N.A. ("Bank of America") account number 003935250919, held in the name JADM Inc ("JADM account #0919")

(2)   Up to $306,627.19 in Branch Banking and Trust Company ("BB&T") account number 5153700062, held in the name Consolidated Fuel Atlantic ("Consolidated Fuel account #0062")

(3)   Up to $375,656.03 in BB&T account number 5195939162, held in the name of Northrop Group Sensor Division ("NGS Div. account #9162")

(4)   Up to $1,154,000.00 in Bank of America account number 003937719115, held in the name Rolf W Ramelmeier and Maralyn A Ramelmeier ("Ramelmeier account #9115")

(5)   Up to $200,000.00 in BB&T account number 1210000114985, held in the name of Phelps Associates ("Phelps account #4985")

(6)   Up to $225,000.00 in BB&T account number 0005203269384 held in the name Ramel Corp Floorplan ("Ramel account #9384")

(7)   Up to $45,400.00 in BB&T account number 0005112132572 in the name North/South Development Corp ("North/South account #2572")

(8)   Up to $1,150,800.00 in BB&T account number 0005198734278, held in the name Ramel Corp ("Ramel account #4278")

(9)   Up to $51,674.50 in BB&T account number

FILED _____ ENTERED
_____ LODGED _____ RECEIVED

DEC 1 8 2014

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

Case No. **14-2796TJS**

*thru*

**14-2815TJS**

1

0005112132718, held in the name R&R Cycle Sales Inc ("R&R Cycle account #2718")

(10)    Up to $134,670.00 in BB&T account number 0005202134906, held in the name RRA Select Autos Inc ("RRA Select account #4906")

(11)    Up to $719,754.56 in BB&T Securities, LLC/ BB&T Scott & Stringfellow ("BB&T Scott and Stringfellow") account number 36798931, held in the name BB&T Collateral Loan A/C FBO Phelps Associates ("Phelps account #8931")

(12)    Up to $478,009.79 in BB&T Scott & Stringfellow account number 10440940, held in the name Phelps Associates ("Phelps account #0940")

(13)    Up to $26,839.61 in Bank of America account number 446021299454, held in the name RCX Inc ("RCX account #9454")

(14)    Up to $108,117.55 in Bank of America account number 446000174163, held in the name Roger D Parrish Mem Scholarship Trust ("Roger D Parrish account #4163")

(15)    Up to $660,000.00 in Bank of America account number 003935267546, held in the name Equity Assistance Inc ("Equity Assistance account #7546")

(16)    Up to $945,950.53 in Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") account number 7LX-10218, held in the name Rolf Ramelmeier and Maralyn Ramelmeier JTWROS, Pledged to ML Lender, C/O Rolf Ramelmeier ("Ramelmeier account number 0218")

(17)    The Penn Mutual Life Insurance Company ("Penn Mutual") Policy Number 008003685, held in the name Rolf W Ramelmeier ("Ramelmeier policy #008003685")

(18)    Deed of Trust and Security Agreement for real property located at 3421 14th Street, NW, Washington, D.C. , Square #2836, Lot #0123 ("Deed of Trust for 3421 14th St.")

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH & SEIZURE WARRANTS

I, Special Agent Jason C. Bender, being duly sworn, depose and state as follows:

### INTRODUCTION

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been employed by the FBI since February 2005. I am an "investigative or law enforcement officer" of the United States within the meaning of § 2510(7) of 18 U.S.C. that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in §§ 371, 1341, 1343, 1344, and 1349 of 18 U.S.C., and related offenses.

2.      I have attended the training course for Special Agents at Quantico, Virginia, and have trained in Counterterrorism and White Collar Crime. I am currently assigned to the Baltimore Division, where I have been assigned to work White Collar Crime matters, which include Mail Fraud, Wire Fraud, Bank Fraud, Mortgage Fraud and High Yield Securities Fraud. Your affiant has been trained in the requirements for probable cause and participated in several searches, arrests, and seizure warrants involving a variety of federal offenses.

3.      With respect to your affiant's technical expertise, I attended the standard special agent training course offered at Quantico, Virginia. During this course, I received lessons on the use of computers, IP addresses, e-mail servers, and the like. Finally, over the course of several investigations, your affiant has consulted with other cyber professionals in the law enforcement field regarding the evidentiary value of computers and cell phones in conjunction with wireless and e-mail servers.

4.    The facts set forth in this Affidavit are based upon my personal knowledge, knowledge obtained from my interviews with witnesses and review of documents during my participation in this investigation, and information gained through your affiant's training and experience.  Where the statements of other persons or the contents of documents and records are related herein, they are most often related in substance and in part and not verbatim.  Similarly, all assertions concerning dates, numbers and dollar figures are approximate, based upon information and evidence gathered to date.  This Affidavit is submitted for the limited purpose of establishing probable cause in the support of these applications for search and seizure warrants, and thus, it does not contain every fact known by me or the United States.

## PURPOSE OF AFFIDAVIT

5.    Your affiant makes this Affidavit in support of applications for:

I.    a search warrant for the "SUBJECT PREMISES" described below in paragraph 6 and Attachment A, for the items listed in Attachment B;

II.    a search warrant for the "SUBJECT ACCOUNT", described below in paragraph 7 and Attachment C, for the items listed in Attachment D. The items listed in Attachments B and D constitute evidence of violations of: 1) conspiracy to commit mail and wire fraud in violation of 18 U.S.C §1349;  2) wire fraud, in violation of 18 U.S.C § 1343; 3) mail fraud, in violation of 18 U.S.C § 1341; (5) money laundering in violation of 18 U.S.C §§ 1956 and 1957; and 4) aiding and abetting of these crimes, in violation of 18 U.S.C § 2, among other federal crimes;

III.    Seizure warrants for the following property (together, "SUBJECT PROPERTY"):

(1)    Up to $240,834.26 in Bank of America, N.A. ("Bank of America") account number 003935250919, held in the name JADM Inc ("JADM account #0919")

4

(2)  Up to $306,627.19 in Branch Banking and Trust Company
("BB&T") account number 5153700062, held in the name
Consolidated Fuel Atlantic ("Consolidated Fuel account #0062")

(3)  Up to $375,656.03 in BB&T account number 5195939162, held in
the name of Northrop Group Sensor Division ("NGS Div. account
#9162")

(4)  Up to $1,154,000.00 in Bank of America account number
003937719115, held in the name Rolf W Ramelmeier and Maralyn
A Ramelmeier ("Ramelmeier account #9115")

(5)  Up to $200,000.00 in BB&T account number 1210000114985,
held in the name of Phelps Associates ("Phelps account #4985")

(6)  Up to $225,000.00 in BB&T account number 0005203269384 held
in the name Ramel Corp Floorplan ("Ramel account #9384")

(7)  Up to $45,400.00 in BB&T account number 0005112132572 in the
name North/South Development Corp ("North/South account
#2572")

(8)  Up to $1,150,800.00 in BB&T account number 0005198734278,
held in the name Ramel Corp ("Ramel account #4278")

(9)  Up to $51,674.50 in BB&T account number 0005112132718, held
in the name R&R Cycle Sales Inc ("R&R Cycle account #2718")

(10) Up to $134,670.00 in BB&T account number 0005202134906,
held in the name RRA Select Autos Inc ("RRA Select account
#4906")

(11) Up to $719,754.56 in BB&T Securities, LLC/ BB&T Scott & Stringfellow ("BB&T Scott and Stringfellow") account number 36798931, held in the name BB&T Collateral Loan A/C FBO Phelps Associates ("Phelps account #8931")

(12) Up to $478,009.79 in BB&T Scott & Stringfellow account number 10440940, held in the name Phelps Associates ("Phelps account #0940")

(13) Up to $26,839.61 in Bank of America account number 446021299454, held in the name RCX Inc ("RCX account #9454")

(14) Up to $108,117.55 in Bank of America account number 446000174163, held in the name Roger D Parrish Mem Scholarship Trust ("Roger D Parrish account #4163")

(15) Up to $660,000.00 in Bank of America account number 003935267546, held in the name Equity Assistance Inc ("Equity Assistance account #7546")

(16) Up to $945,950.53 in Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") account number 7LX-10218, held in the name Rolf Ramelmeier and Maralyn Ramelmeier JTWROS, Pledged to ML Lender, C/O Rolf Ramelmeier ("Ramelmeier account number 0218")

(17) The Penn Mutual Life Insurance Company ("Penn Mutual") Policy Number 008003685, held in the name Rolf W Ramelmeier ("Ramelmeier policy #008003685")

(18) Deed of Trust and Security Agreement for real property located at 3421 14th Street, NW, Washington, D.C. , Square #2836, Lot #0123 ("Deed of Trust for 3421 14th St."), and

IV. In Support of a Civil Forfeiture Complaint against the following real property:

(1) Real property known as 2049 Sykesville Road, Sykesville, MD 21784, Parcel #03-296210 ("2049 Sykesville Rd.")

(2) Real property known as 1203 Columbia Road, NW, Washington, D.C. 20009, Square #2850, Lot #0174 ("1203 Columbia Rd.")

(3) Real property known as 6413 Allview Drive, Columbia, MD 21046, Parcel #06-400035 ("6413 Allview Drive")

## PREMISES TO BE SEARCHED

6.      The premises to be searched are located at 2049 Route 32, Sykesville, Maryland 21784 ("the SUBJECT PREMISES"), a two story, primarily brown and cream colored residence with an attached three-car garage.  The SUBJECT PREMISES is also addressed as 2049 Sykesville Rd., Sykesville, MD 21784.  The SUBJECT PREMISES is further described in Attachment A.

## E-MAIL ACCOUNT TO BE SEARCHED

7.      The e-mail account to be searched is jadminc@msn.com ("the SUBJECT ACCOUNT"), hosted by Microsoft.  Microsoft is an e-mail provider headquartered in Redmond,

7

WA. This Affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Microsoft to disclose to the government copies of the information (including the content of communications) further described in Attachment C. Upon receipt of the information described in Attachment C, government-authorized persons will review that information to locate the items described in Attachment D.

## STATEMENT OF PROBABLE CAUSE

### Overview of the Investigation

8.      Your affiant is conducting a criminal investigation into Rolf Ramelmeier ("Ramelmeier"), Richard Shoe ("Shoe") and others as yet unknown.   For at least the past 15 years, Ramelmeier's company, JADM, Inc., has contracted with Northrop Grumman Systems Corporation ("Northrop Grumman") to supply natural gas to several Northrop Grumman facilities in Maryland.

9.      As further discussed below, your affiant has uncovered evidence that Ramelmeier engaged in a scheme to defraud by charging Northrop Grumman for more than $11 million worth of natural gas that was never actually delivered to Northrop Grumman. Your affiant believes, based on the investigation to date, that Ramelmeier and Shoe, a business associate residing in North Carolina, used multiple bank accounts and post office boxes in the names of various non-existent or shell companies in order to implement the fraudulent scheme and to conceal the location and ownership of the proceeds of the scheme.

10.      In addition, the investigation has uncovered evidence that Ramelmeier defrauded a natural gas supplier, UGI Energy Services ("UGI"), by causing UGI to pay him broker commissions to which he was not entitled.  Ramelmeier falsely represented to UGI that he had brokered sales agreements between UGI and Northrop Grumman for UGI to supply natural gas

8

to Northrop Grumman. UGI paid Ramelmeier more than $70,000 in commissions for brokering those sales agreements with Northrop Grumman.

## Relevant Individuals, Business Entities and Addresses

11.     Northrop Grumman Corporation, headquartered in Falls Church, VA, is an American global aerospace and defense technology company.  Northrop Grumman Systems Corporation ("Northrop Grumman") is a subsidiary of Northrop Grumman Corporation that maintains several facilities in Linthicum, Maryland..

12.     Rolf Ramelmeier ("Ramelmeier") is a Maryland resident whose primary residence is 2049 Route 32, Sykesville, MD 21784.  Ramelmeier has been identified in bank account documents for JADM, Inc. ("JADM") as the Vice President of JADM, a Maryland corporation which is also located at Ramelmeier's residence.  JADM is in the business of selling or brokering natural gas sales.  Based on your affiant's review of JADM's bank account records, your affiant believes that Northrop Grumman has been JADM's only customer for at least the past 3 years.

13.     Richard Shoe is a resident of North Carolina.  Bank account documents and corporation documents reveal that Ramelmeier and Shoe are involved in numerous businesses together, to include: S&R Properties LLC; Ramel Corporation; R&R Cycle Sales, Inc., T&R Properties LLC, and North South Development Inc. of Nash County.

14.     UGI Energy Services ("UGI"), headquartered in Wyomissing, PA, is a company that sells natural gas, electricity and liquid fuels.

15.     Baltimore Gas & Electric (BGE), headquartered in Baltimore, MD, is a subsidiary of Exelon Corporation.  BGE is a common carrier that delivers natural gas, supplied by

9

companies such as UGI, to the end user, including the Northrop Grumman facilities in Linthicum, Maryland.

### The Business Relationship between JADM and Northrop Grumman

16.     For numerous years, including service terms through October 2014, JADM and Northrop Grumman executed contracts, known as "Exhibits," for the delivery of natural gas to several Northrop Grumman facilities located in Linthicum, Maryland area. Your affiant has reviewed copies of a number of such Exhibits, all of which contain a signature in the name of Ramelmeier on behalf of JADM.   Each Exhibit confirmed the fixed price per unit or "decatherm" of natural gas that JADM was contracted to provide Northrop Grumman over a defined period of time.

17.     JADM issued monthly invoices to Northrop Grumman which specified the decatherms of gas delivered and the cost per decatherm, as contractually agreed in the Exhibits. Northrop Grumman would then issue payment to JADM on the invoices.

18.     In December 2013, Northrop Grumman noticed some unusual charges by JADM for natural gas purportedly used at one of Northrop Grumman's locations.  When Northrop Grumman personnel questioned Ramelmeier about the charges, Ramelmeier responded that JADM had made a billing error and offered to credit Northrop Grumman for the overcharge.

19.     Subsequently, Northrop Grumman hired CQI Associates ("CQI"), a consulting firm with expertise in the natural gas industry, to conduct an analysis of the JADM invoices to determine if there had been any other overcharges.   CQI conducted that analysis by comparing the amount of gas delivered, per JADM's monthly invoices, to the amount of gas delivered to Northrop Grumman, per BGE's records.  This analysis revealed that JADM routinely charged

Northrop Grumman for more decatherms of natural gas than BGE had actually delivered. [1] In total, CQI's analysis revealed that from 2003 through 2013, JADM overcharged Northrop Grumman by approximately $11 million.

The Fraud Scheme Using UGI Beginning in 2012

20.     To date, your affiant's review has included, but has not been limited to, bank statements from approximately July 2011 to 2014 as well as invoices, emails, agreements, and other records during that same time period.  As set forth below, this review has indicated that from approximately 2012 to 2014, Ramelmeier operated a fraud scheme that enabled him to overcharge Northrop Grumman for natural gas supplied by UGI.

21.     Beginning in 2012, Ramelmeier negotiated sales contracts known as Customer Confirmation Agreements between UGI and Northrop Grumman for the sale of natural gas. Ramelmeier represented himself as a gas broker and led UGI personnel to believe that UGI was entering into Customer Confirmation Agreements directly with Northrop Grumman when, in fact, Northrop Grumman had no knowledge of these Customer Confirmation Agreements. Ramelmeier used the name Northrop Grumman on these agreements with UGI and signed, or caused them to be signed, in the name of Richard Shoe as the Northrop Grumman representative. There was no employee named Richard Shoe at Northrop Grumman.

22.     UGI emails indicate that pursuant to these Confirmation Agreements, UGI was supposed to email Ramelmeier a copy of each UGI invoice which was addressed to Northrop Grumman.  UGI was also supposed to mail each invoice to P.O. Box 417, Roanoke Rapids,

---

[1] As the common carrier, BGE physically delivered the gas from the actual supplier.  UGI emails indicate that UGI was the actual supplier of natural gas to Northrop Grumman facilities from approximately November 2001 to October 2009, Potomac Electric Power Company ("PEPCO") was the supplier from approximately November 2009 to October 2012, and UGI again became the supplier to Northrop Grumman in approximately November 2012.

North Carolina.  United States Postal Service records reveal that P.O. Box 417, Roanoke Rapids,

NC was rented in the name "Northrup[sic] Sensors" by Richard Shoe, 550 Julian Allsbrook

Highway, Roanoke Rapids, NC on April 28, 2005.  Northrop Grumman representatives have

informed your affiant that Northrop Grumman does not use or have any connection to P.O. Box

417 in Roanoke Rapids, NC.

23.     While UGI was sending its invoices to the P.O. Box, Ramelmeier was creating or

causing to be created invoices on JADM letterhead which charged the real Northrop Grumman

for the natural gas provided by UGI.  Overall, the JADM invoices charged for more natural gas

than the amount that UGI had actually invoiced to Northrop Grumman and that BGE had

delivered.[2]

24.     Northrop Grumman would then pay the JADM invoices via check to JADM, or in

recent years via wire transfer, to JADM's Bank of America account ending in #0919 ("JADM

account #0919").  Bank records revealed that Ramelmeier had signature authority on that

account along with Mark Ramelmeier and Maralyn Ramelmeier.  Mark is listed as President and

Maralyn is listed as Secy/Treasurer.

[2] RS was a manager for Northrop Grumman who was responsible for managing the purchase of natural gas for the company facilities in Maryland.  RS believed that JADM was a gas broker that negotiated with various natural gas suppliers to obtain the best price for Northrop Grumman.  RS has advised your affiant that beginning in approximately 2007, RS and Ramelmeier agreed that in certain months Ramelmeier would over bill Northrop Grumman for gas so that Ramelmeier would not incur an "imbalance penalty" for bringing too much or too little natural gas into the market place.  Ramelmeier would tell RS what months and amounts he was going to over bill Northrop to avoid the imbalance penalty.  Ramelmeier and RS would then agree on the months and amounts that Ramelmeier would under bill Northrop Grumman in order to adjust for prior months' over billings.  RS maintained a spreadsheet to track the amount Northrop Grumman had been over or under billed by Ramelmeier as it related to the imbalance penalty.  During 2012, RS and Ramelmeier agreed that Ramelmeier would under bill Northrop Grumman $15,000 per month in order to net the overall imbalance penalty adjustment to zero.  Based on the investigation to date, these billing differences net to zero by the end of 2013 and are minimal through the years as compared to the overall dollar amount of the fraud scheme described herein.  Additionally, the CQI analysis, as further described in paragraph 19 takes into account the imbalance penalty adjustments as their analysis used actual JADM invoiced amounts, which include any over or under billing as it relates to the imbalance penalty.  As such, as the overall imbalance penalty adjustment nets to zero by the end of 2013, the imbalance penalty adjustments have no impact on CQI's total loss calculation.

25.     Ramelmeier would then disburse a check from JADM account #0919, payable to Consolidated Fuel Atlantic, which would be deposited into BB&T account ending in #0062 ("Consolidated Fuel account #0062").  Bank records for Consolidated Fuel account #0062 indicate that the account was in the name of Consolidated Fuel Atlantic, 2049 Sykesville Rd., Sykesville, MD and that Ramelmeier had sole signature authority on the account.  Your affiant believes Consolidated Fuel Atlantic was a shell company that Ramelmeier used in furtherance of the fraud scheme, because there was no other significant activity in the bank account other than the deposits from JADM account #0919, the mailing address was the same address as that of Ramelmeier's residence and JADM's offices, and an internet search revealed no listing or website for Consolidated Fuel Atlantic.

26.     Most of the funds deposited into Consolidated Fuel account #0062 were then transferred to a BB&T account ending in #9162.  Bank records for account #9162 reveal that the account was in the name of Northrop Group Sensor Division ("NGS Div."), with an address of P.O. Box 417, Roanoke Rapids, NC.  Ramelmeier is listed as President, Richard Shoe as Vice President, and Maralyn Ramelmeier as Secretary.

27.     Checks were then disbursed from the NGS Div. account #9162 to pay the UGI invoices, thereby making it appear that UGI was receiving payment from a Northrop Grumman entity in the name of NGS Div.  Your affiant believes that NGS Div. is another shell company used by Ramelmeier in furtherance of the fraud, because there is no listing of this business in the North Carolina Secretary of State's records and the signature card for the account lists the same Employer Identification Number ("EIN") as that used by JADM.  Bank records have revealed numerous manually signed checks out of the NGS Div. account #9162 payable to UGI.  Your affiant has compared the Shoe signature appearing on various bank records to the signatures on

13

some of the manually signed checks from NGS Div. account #9162 payable to UGI.  The Shoe signatures all appear to have been written by the same person.   As indicated in paragraph 22, above, United States Postal Service records reveal that P.O. Box 417, Roanoke Rapids, NC was rented in the name "Northrup[sic] Sensors" by Shoe.

Example of the Overbilling - April 2013

28.     As indicated in paragraph 19 above, CQI's analysis revealed that JADM overbilled Northrop Grumman routinely from 2003 to 2013.  Your affiant has met with CQI personnel and reviewed CQI's analysis, to include reviewing a sampling of the JADM invoices and BGE records that supported their analysis.  Additionally, for the April 2013 time period, your affiant has reviewed all of the invoices from JADM to Northrop Grumman and all of the invoices from UGI to Northrop Grumman, as well as the related payments for these invoices.

29.     Based on that review, your affiant has determined that for the month of April 2013, JADM sent Northrop Grumman three invoices for "gas purchased during the month of April, 2013" (JADM invoices 4131, 4132, and 4133, dated 4/15/13, 4/15/13, and 4/15/13 respectively) for a total billed amount of $342,851.19.   For that same month of April, UGI issued to Northrop Grumman two invoices for natural gas delivered to the Northrop Grumman facilities.[3] Those UGI invoices, dated 5/6/13 and 5/16/13, charged a total of $220,039.59, which was $122,811.60 less than the amount that Ramelmeier charged Northrop Grumman during this time period.

30.     On 4/24/13, Northrop Grumman paid JADM $342,851.19 for the three JADM invoices by means of a wire transfer from a Northrop Grumman bank account to JADM account #0919.  On 4/30/13, a check in the amount of $330,580.00 was deposited into Consolidated Fuel

---

[3] These UGI invoices list "service periods" of 03/25/2013 – 04/23/2013,  04/01/2013 – 04/30/2013 and 04/10/2013 – 05/10/2013

account #0062. That check, made payable to Consolidated Fuel Atlantic of MD, was drawn on the JADM account #0919, signed in the name of Ramelemier, and contained the notation "APRIL NAT GAS" on the memo line.

31.     On 5/6/13, $320,533.00 was transferred from the Consolidated Fuel account #0062 to the NGS Div. account #9162. Several weeks later, UGI received payment for the two UGI invoices in the form of a check dated 5/24/13, drawn on the NGS Div. account #9162 in the amount of $220,039.59.

32.     As a result of this process of fraudulent billing and transfers of the money received from Northrop Grumman, Ramelmeier was able to pay the UGI invoices in full and to keep for himself the extra $122,811.60 that Northrop Grumman had paid on the JADM invoices. For the three month time period of April 2013 through June 2013, which includes the analysis for April 2013 above, Ramelmeier charged Northrop Grumman approximately $289,000 more than UGI invoiced Northrop Grumman. Additionally, RS's spreadsheet, previously described in Footnote 2, reflects that Ramelmeier and RS had agreed that Ramelmeier was to under bill Northrop Grumman by $15,000 per month during this time period in order to adjust for prior months' of over billings related to the imbalance penalty. Despite agreeing to "under bill" Northrop Grumman for these months, Ramelmeier still overcharged Northrop Grumman by approximately $289,000.

33.     As stated in Footnote 1, UGI emails indicate PEPCO was the supplier of natural gas to Northrop Grumman from approximately November 2009 to October 2012. Due to the still largely covert nature of the investigation, your affiant has not yet reviewed invoices from PEPCO or interviewed any witnesses from PEPCO. However, based on CQI's analysis of JADM overcharging Northrop Grumman each year from 2003 to 2013, as previously described

15

in paragraph 19, your affiant believes Ramelmeier also overcharged Northrop Grumman during the time PEPCO was Northrop Grumman's natural gas supplier.  In addition, bank records reveal that from August 2011 through March 2013, NGS Divs. account #9162 paid PEPCO over $4.4 million, and the memo lines on the majority of the NGS Div. checks to PEPCO reference natural gas and/or what appear to be invoice numbers.  For example, the memo line for NGS Div. account #9162 check number 1371, dated 10/5/11, states "JULY 2011 NAT GAS INV #110748".  Also from August 2011 through March 2013, bank records reveal JADM account #0919 received approximately $47,000 from PEPCO, which your affiant believes to be commission payments, based on the amounts being comparable to the commission payments made by UGI to Ramelmeier, as stated in paragraph 10.

Use of Email In Furtherance of the Fraud

34.     Records from Microsoft for jadminc@msn.com reveal the account was registered on or about 12/10/2001 and that the subscriber is Rolf Ramelmeier, 2049 Route 32, Sykesville, MD 21784.  Your affiant knows, through review of emails obtained from Northrop Grumman and UGI, as well as interviews, that Ramelmeier frequently used the e-mail account jadminc@msn.com to communicate on various issues, including shipments of natural gas and invoicing, including the following examples.

35.     An email dated 8/23/11, sent from jadminc@msn.com to a Northrop Grumman employee, states: "Hi XXXX, Here are the August 2011 Natural gas invoices. I am sending them out early because I am having my other knee replaced Monday, August 28th and will not be able to do the invoices until late next week.  Suppliers want to get paid, no matter what. Thanks, Rolf." Northrop Grumman has represented to your affiant that Northrop Grumman's e-mail servers are located in Virginia.

16

36.   An email dated 9/16/12, sent from jadminc@msn.com to a UGI employee, states as follows "....They should email me all bills and correspondence to Northrop to jadminc@msn.com ...Rolf."

37.   An email dated 3/5/13, sent from jadminc@msn.com to two UGI employees states: "Hi XXXX and XXXX, I just got off the phone with Northrop. I called them to go over the invoices you sent me. They requested that going forward, they do not wish to receive invoices piecemeal throughout the month, thereby causing them to make multiple payments in a month.  They wish to only get one total invoice each month...Rolf."

38.   An email dated 3/21/13, sent from jadminc@msn.com to a UGI employee states: "Hi XXXX, I just received my commission check for Oct-Dec 12 and thank you all. I am requesting a short summary of each accounts breakdown, so I can verify with my records...Rolf."

39.   Many of the outgoing emails that your affiant has reviewed from this account also contain the following signature block:

> Rolf W Ramelmeier
> JADM INC
> 2049 Route 32
> Sykesville, MD 21784
> Office 410-489-7952
> Fax 410-489-7038
> Cell 410-596-2730

40.   Based on these emails, your affiant believes that there is probable cause to believe that the contents of the email address jadminc@msn.com will include further evidence of the fraudulent scheme and may identify any other participants in the scheme.

Meeting Between Northrop Grumman and Ramelmeier

41.     On May 16, 2014, Northrop Grumman representatives confronted Ramelmeier about the $11 million in overcharges discovered by the CQI analysis.   Also present at the meeting with Ramelmeier was BM, an attorney, who indicated that he was not representing Ramelmeier and was attending solely as a friend of Ramelmeier.

42.     During this meeting, according to the Northrop Grumman representatives, they asked Ramelmeier to explain the Customer Confirmation Agreements executed between UGI and Northrop Grumman since Northrop Grumman had never entered into these Customer Confirmation Agreements nor did they have an employee or representative named Richard Shoe. Ramelmeier claimed that he had used the Northrop Grumman name because UGI would only do business with him if the contract for the sale of natural gas was between UGI and Northrop Grumman.   Ramelmeier then stated that he used the name Richard Shoe because that is a name he used sometimes.  BM stated that the reason for the billing errors was because Ramelmeier had other people doing the billing for JADM and there was embezzlement and corrupt employees.

43.     In a letter to the Department of Defense Office of Inspector General, dated May 22, 2014, a Northrop Grumman representative reported that when Northrop Grumman requested that Ramelmeier provide access to his company records during the 5/16/14 meeting, Ramelmeier claimed that there may not be any JADM files and that a company computer housing much of the data had recently been corrupted.

44.     United States Postal Service records reveal that on 5/20/14, two business days after this meeting, P.O. Box 417, Roanoke Rapids, NC was closed.  Your affiant has reviewed the US Postal Service "Application for Refund of Fees, Products and Withdrawal of Customer Accounts" ("the USPS Application") which was signed in the name Richard Shoe upon the

18

closing of the post office box.  Your affiant has compared that Shoe signature to the Shoe signatures appearing on various bank account opening signature cards.  The Shoe signatures all appear to have been written by the same person.

45.     Subsequent to the May 16, 2014 meeting with Ramelmeier, Northrop Grumman ceased conducting business with JADM, Inc.  However, based on your affiant's training and experience, your affiant knows that businesses commonly maintain financial records for multiple years for accounting, tax, or for other business reasons.  Accordingly, your affiant believes that such business records are still maintained at the SUBJECT PREMISES.

### Property Subject to Seizure

46.     I submit that there is probable cause to believe the SUBJECT PROPERTY is the proceeds of mail fraud, committed in violation of 18 U.S.C § 1341, wire fraud, committed in violation of 18 U.S.C § 1343, and/or is property involved in money laundering, committed in violation of 18 U.S.C §§ 1956 and/or 1957.

47.     This affidavit is submitted in support of an application for seizure warrants for the SUBJECT PROPERTY, which constitutes evidence and proceeds of conspiracy to commit mail and wire fraud, mail fraud, wire fraud and money laundering in violation of 18 U.S.C. §§ 1341, 1343, 1349, 1956 and 1957, and which is subject to seizure pursuant to 28 U.S.C § 2461(c), 18 U.S.C. § 981(a)(l)(A) & § 981(a)(1)(C), 18 U.S.C. § 1956(c)(7), 18 U.S.C. § 1961(1), 21 U.S.C. § 853, and 18 U.S.C. § 982(a)(1).

### Relevant Legal Authority

48.     18 U.S.C. § 981(a)(1)(A) provides in relevant part for the civil forfeiture of "[a]ny

property, real or personal, involved in a transaction or attempted transaction in violation of §

1956, 1957 or 1960 of this title, or any property traceable to such property."

49.     18 U.S.C. § 981(a)(1)(C) provides in relevant part for the civil forfeiture of "[a]ny

property . . . which constitutes or is derived from proceeds traceable to a violation of . . . . any

offense constituting 'specified unlawful activity' (as defined in § 1956(c)(7) of this title) . . . ."

18 U.S.C. § 1956(c)(7) incorporates offenses enumerated in 18 U.S.C. § 1961 as specified

unlawful activities.  18 U.S.C. § 1961 defines "racketeering activity" as including mail fraud in

violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343.

50.     As described in paragraph 19, an analysis by CQI has revealed that JADM

overcharged Northrop Grumman by approximately $11 million from 2003 through 2013.  The

three primary bank accounts involved in the initial receipt, transfer and disbursement of

fraudulently obtained funds were JADM account #0919, Consolidated Fuel account #0062 and

NGS Div. account #9162.  Your affiant has reviewed the bank records for these three accounts

for the period beginning on or about July 1, 2011 through on or about July 31, 2014[4].  During

this time period, the bank accounts reflect numerous transactions in which funds were transferred

out of these accounts and in to other Ramelmeier and/or Shoe controlled accounts.   Bank

records for many of these accounts list Ramelmeier's address as the account mailing address.

Your affiant believes that the purpose of these transactions was to conceal the nature, source,

ownership, and/or location of the criminally-derived proceeds of this fraud.

---

[4] JADM account #0919 was reviewed through July 31, 2014, Consolidated Fuel account #0062 was reviewed
through June 30, 2014 and NGS Div. account #9162 was reviewed through May 31, 2014.

(1)     JADM account #0919

51.     Bank records for account #0919 at Bank of America reflect the account is held in

the name JADM, Inc., with an address of 2049 Sykesville Rd., Sykesville, MD. Ramelmeier is a

signer on this account along with Maralyn Ramelmeier and Mark Ramelmeier.  As described in

paragraphs 24 and 25, JADM account #0919's primary bank activity was the receipt of funds

from Northrop Grumman and the transfer of funds to Consolidated Fuel #0062.  Bank records

reveal that from July 1, 2011 to June 30, 2014, approximately $11 million of the $11.8 million

deposited into JADM account #0919 came directly from Northrop Grumman.[5] Bank records

reveal that on 3/12/14, $234,151.61 was deposited into JADM account #0919 from Northrop

Grumman.  The bank balance for JADM account #0919 on 3/12/14 was $240,834.26, which

includes that deposit.  The transfer of more than $10,000 of proceeds into JADM account #0919

means that the account was involved in money laundering in violation of 18 U.S.C § 1957 and,

therefore, the account balance on 3/12/14 of $240,834.26 is subject to seizure and forfeiture in

JADM account #0919.


(2)     Consolidated Fuel account #0062

52.     Bank records for account #0062 at BB&T reflect the account is held in the name

Consolidated Fuel Atlantic, with an address of 2049 Sykesville Rd., Sykesville, MD.

Ramelmeier is the signer on this account.  As described in paragraphs 25 and 26, Consolidated

Fuel account #0062's primary bank activity was the receipt of funds from JADM account #0919

---

[5] This $11million represents gross proceeds JADM received from Northrop Grumman from 7/1/11 to 6/30/14.
Based on a review of CQI's analysis, as described previously in paragraph 19,  JADM overcharged Northrop
Grumman a total of approximately $3.9 million from 2011 to 2013.

and the transfer of funds to the NGS Div. account #9162.  Bank records reveal that from July 1,

2011 to May 31, 2014, approximately $10.4 million of the $11.3 million deposited into

Consolidated Fuel account #0062 came directly from JADM account #0919.  Bank records

reveal that on 1/29/14, $284,750.00 was deposited into Consolidated Fuel account #0062 from

JADM account #0919.  The bank balance for Consolidated Fuel account #0062 on 1/29/14 was

$306,627.19, which includes that deposit.  The transfer of more than $10,000 of proceeds into

Consolidated Fuel account #0062 means that the account was involved in money laundering in

violation of 18 U.S.C § 1957 and, therefore, the account balance on 1/29/14 of $306,627.19 is

subject to seizure and forfeiture in Consolidated Fuel account #0062.


(3)    NGS Div. account #9162

53.    Bank records for account #9162 at BB&T reflect the account is held in the name

Northrop Group Sensor Division, with an address of P.O. Box 417, Roanoke Rapids, NC.

Account documents reflect Ramelmeier, Shoe, and Maralyn Ramelmeier as signers on this

account.

54.    USPS records reveal that P.O. Box 417, Roanoke Rapids, NC was rented on April

28, 2005, in the name "Northrup [sic] Sensors" by Richard Shoe, 550 Julian Allsbrook Highway,

Roanoke Rapids, NC.  The P.O. Box was closed on 5/20/14, 2 business days after Ramelmeier

was confronted with the fraud in person by Northrop Grumman employees.

55.    As described in paragraph 27, the primary operating account for paying UGI

invoices in furtherance of the fraud was NGS Div. account #9162.  Bank records reveal that from

July 1, 2011 to May 31, 2014, approximately $11.1 million of the $12.2 million deposited into

NGS Div. account #9162 came directly from Consolidated Fuel account #0062.  The remaining

deposits into NGS Div account #9162 during this time period came from other Ramelmeier controlled bank accounts. Bank records reveal that on 1/30/14, $300,525.00 was transferred into NGS Div. account #9162 from Consolidated Fuel account #0062. The bank balance for NGS Div. account #9162 on 1/30/14 was $375,656.03, which includes that transfer. The transfer of more than $10,000 of proceeds into NGS Div. account #9162 means that the account was involved in money laundering in violation of 18 U.S.C § 1957 and, therefore, the account balance on 1/30/14 of $375,656.03 is subject to seizure and forfeiture in NGS Div. account #9162.

(4)    Ramelmeier account #9115

56.    Bank records for account #9115 at Bank of America reflect the account is held in the names of Rolf Ramelmeier and Maralyn Ramelmeier with an address of 2049 Sykesville Rd., Sykesville, MD. Ramelmeier and Maralyn Ramelmeier are signers on this account.

57.    As stated above in paragraphs 51-52 and 55, fraud proceeds were traced from JADM account #0919 to Consolidated Fuel Account #0062 then to NGS Div account #9162. Bank records reveal that from approximately August 2011 through February 2014, checks drawn on the NGS Div. account #9162 totaling $1,154,000, were deposited into Ramelmeier account #9115, to include a $20,000 check deposited on 12/24/13. The transfer of more than $10,000 of proceeds into Ramelmeier account #9115 means that the account was involved in money laundering in violation of 18 U.S.C § 1957 and therefore, the total amount of proceeds transferred of $1,154,000, is subject to seizure and forfeiture in Ramelmeier account #9115.

23

(5)   Phelps account #4985

58.   Bank records for account #4985 at BB&T indicate that the account is held in the name Phelps Associates, 2049 Route 32, Sykesville, MD.  Ramelmeier and his spouse, Maralyn Ramelmeier, are both listed as "Partner" and both have signature authority on the account.

59.   As stated above in paragraphs 51-52 and 55, fraud proceeds were traced from JADM account #0919 to Consolidated Fuel Account #0062 then to NGS Div account #9162.  On 11/13/12, $100,000 was transferred from the NGS Div. account #9162 into Phelps account #4985.  Additionally, on 4/26/13, another $100,000 was transferred from NGS Div. account #9162 into Phelps account #4985.  The transfer of more than $10,000 of proceeds into Phelps account #4985 means that the account was involved in money laundering in violation of 18 U.S.C § 1957 and therefore, the total amount of proceeds transferred of $200,000 is subject to seizure and forfeiture in Phelps account #4985.


(6)   Ramel account #9384

60.   Bank records for account # 9384 at BB&T reflect that the account is held in the name of Ramel Corp. with an address of 550 Julian Allsbrook Highway, Roanoke Rapids, NC. Ramelmeier and Shoe are the signers on this account.

61.   As stated above in paragraphs 51-52 and 55, fraud proceeds were traced from JADM account #0919 to Consolidated Fuel Account #0062 then to NGS Div account #9162. Bank records from 10/1/13 through 12/31/13 reflect that approximately $225,000 was transferred from NGS Div. account #9162 to Ramel account #9384, to include a $25,000 transfer on 12/10/13. The transfer of more than $10,000 of proceeds into Ramel account #9384 means that the account was involved in money laundering in violation of 18 U.S.C § 1957 and therefore, the

24

total amount of proceeds transferred of $225,000 is subject to seizure and forfeiture in Ramel account #9384.

(7)     North/South account #2572

62.     Bank records for account #2572 at BB&T reflect that the account is held in the name of North/South Development Corp., with an address of 2049 Rt. 32, Sykesville, MD. Ramelmeier and one other individual are listed as signers of this account.

63.     As stated above in paragraphs 51-52 and 55, fraud proceeds were traced from JADM account #0919 to Consolidated Fuel Account #0062 then to NGS Div account #9162. Bank records reflect that from approximately December 2011 to December 2013, $26,400 was transferred from NGS Div. account #9162 to North/South #2572 and $19,000 was transferred from Consolidated Fuel account #0062 to North/South account #2572, for a total of $45,400 transferred to North/South account #2572. The transfer of more than $10,000 of proceeds into North/South account #2572 means that the account was involved in money laundering in violation of 18 U.S.C § 1957 and therefore, the total amount of proceeds transferred of $45,400 is subject to seizure and forfeiture in North/South account #2572.

(8)     Ramel account #4278

64.     Bank records for account #4278 at BB&T reflect the account is held in the name Ramel Corp and Rolf Ramelmeier, with an address of RR 32 Box 2049, Sykesville, MD. It appears Ramelmeier, Shoe, Maralyn Ramelmeier and one other individual are signers on this account based on a review of the signatures on the signature card for Ramel account #4278 compared to their respective signatures on other account signature cards reviewed by your

affiant.[6]

65.     As stated above in paragraphs 51-52 and 55, fraud proceeds were traced from JADM account #0919 to Consolidated Fuel Account #0062 then to NGS Div account #9162. Bank records reveal that from July 2011 through March 2014, approximately $1,150,800 was transferred from NGS Div #9162 to Ramel account #4278.  The transfer of more than $10,000 of proceeds into Ramel account #4278 means that the account was involved in money laundering in violation of 18 U.S.C § 1957 and therefore, the total amount of proceeds transferred of $1,150,800 is subject to seizure and forfeiture in Ramel account #4278.


(9)     R&R Cycle account #2718

66.     Bank records for account #2718 at BB&T reflect the account is held in the name R&R Cycle Sales Inc. DBA Roanoke Valley Motor Sports, with an address of 550 Julian R Allsbrook Hwy, Roanoke Rapids, NC.  Shoe and two other individuals are signers on this account.

67.     On 7/8/14, a Business Corporation Annual Report was filed with the North Carolina Secretary of State for R&R Cycle Sales, Inc.  In that report, Richard Shoe is listed as the President and Rolf W. Ramelmeier is listed as Vice President. The listed address for the company is 550 Julian R. Allsbrook Highway, Roanoke Rapids, NC.

68.     As stated above in paragraphs 51-52 and 55, fraud proceeds were traced from JADM account #0919 to Consolidated Fuel Account #0062 then to NGS Div account #9162. Additionally, as stated in paragraph 65, fraud proceeds were also traced to Ramel account #4278. Bank records reveal that from July 2011 through April 2014, approximately $950,000 was

---

[6] The bank records your affiant reviewed for Ramel account #4278 did not list printed names of the authorized signers on the signature card.  The bank records only listed physical signatures.

transferred online from Ramel account #4278 to R&R Cycle account #2718.  On 7/29/13, NGS

Div. account #9162 transferred $85,000 to Ramel account #4278.  That same day, 7/29/13,

Ramel account #4278 transferred $51,674.50 to R&R Cycle account #2718.  The transfer of

more than $10,000 of proceeds into R&R Cycle account #2718 means that the account was

involved in money laundering in violation of 18 U.S.C § 1957 and, therefore, the total amount of

proceeds transferred of $51,674.50 is subject to seizure and forfeiture in R&R Cycle account

#2718.


(10)   RRA Select account #4906

69.     Bank records for account #4906 at BB&T reflect the account is held in the name

RRA Select Autos Inc DBA Select Auto Sales, with an address of 320 Becker Drive,  Roanoke

Rapids, NC.  Based on a comparison of the Shoe signature appearing on various bank records

and corporation documents for RRA Select filed with the North Carolina Secretary of State to

the signature on the RRA Select account #4906 signature card your affiant believes that Shoe

and two other individuals are signers on this account.[7]

70.     According to public records on file with the North Carolina Secretary of State,

RRA Select Auto, Inc.'s Articles of Incorporation were filed on 5/20/13, with an address of 320

Becker Drive, Roanoke Rapids, NC.  Shoe is listed as the Incorporator and Resident

Agent/President of the company.

71.     As stated above in paragraphs 51-52 and 55, fraud proceeds were traced from

JADM account #0919 to Consolidated Fuel Account #0062 then to NGS Div account #9162.  On

10/22/13, Ramel account # 9384 received an online transfer deposit of $100,000 from NGS Div.

---

[7] Bank records reviewed by your affiant for RRA Select account #4906 did not list the printed name of Richard Shoe on the signature card, only a physical signature.

account #9162. On or about the following day, 10 sequential checks, totaling $134,670 and all made payable to Select Auto Sales were issued out of Ramel account #9384. The printed payor name on these checks is "Ramel Corp Floorplan, 252-410-0010, 320 Becker Drive, Roanoke Rapids, NC 27870-4511." Your affiant believes that these checks were associated with the purchase of used vehicles, as the memo lines on the checks make reference to vehicles, such as "2010 Accord SP 126" on one of the checks and "2011 Civic SP127" on another. These checks then were all deposited into RRA Select account #4906 on 10/23/13. The transfer of more than $10,000 of proceeds into RRA Select account #4906 means that the account was involved in money laundering in violation of 18 U.S.C § 1957 and therefore, the total amount of proceeds transferred of $134,670 is subject to seizure and forfeiture in RRA Select Auto account #4906.

(11)    Phelps account #8931

72.    Bank records for account #8931 at BB&T Scott & Stringfellow[8] reflect the account is held in the name BB&T Collateral Loan A/C FBO Phelps Associates, with an address of 2049 Sykesville Rd., Sykesville, MD. Ramelmeier and Maralyn Ramelmeier are signers on this account, which appears to be an investment account.

73.    As stated above in paragraphs 51-52 and 55, fraud proceeds were traced from JADM account #0919 to Consolidated Fuel Account #0062 then to NGS Div account #9162. Additionally, as stated in paragraph 59, on 11/13/12, $100,000 was transferred from the NGS Div. account #9162 into account Phelps account #4985. The next day, 11/14/12, $100,000 from Phelps account #4985 was used to purchase Official BB&T Check, #5005008743, made payable to Scott and Stringfellow. On 11/19/12, Official BB&T Check #5005008743 was deposited into

---

[8] BB&T Scott & Stringfellow is the retail brokerage subsidiary of BB&T.

Phelps account #8931.  On 4/26/13, another $100,000 was transferred from NGS Div. account #9162 into Phelps account #4985. That same day, $100,000 from Phelps account #4985 was used to purchase Official BB&T Check #5005388550, made payable to BB&T Scott and Stringfellow.  On 4/30/13,  Official BB&T Check #5005388550 was deposited into Phelps account #8931.  The bank balance for Phelps account #8931 on 4/30/13, the date of the $100,000 deposit, was $719,754.56, which includes that deposit.  The transfer of more than $10,000 of proceeds into Phelps account #8931 means that the account was involved in money laundering in violation of 18 U.S.C § 1957 and, therefore, the account balance on 04/30/13 of $719,754.56 is subject to seizure and forfeiture in Phelps account #8931.

(12)    Phelps account #0940

74.    Bank records for account  #0940 at BB&T Scott & Stringfellow reflect the account is held in the name Phelps Associates, with an address of 2049 Sykesville Rd., Sykesville, MD.  Ramelmeier and Maralyn Ramelmeier are signers on this account, which was opened in December 2013.

75.    As stated above in paragraphs 51-52 and 55, fraud proceeds were traced from JADM account #0919 to Consolidated Fuel Account #0062 then to NGS Div account #9162. Additionally, as stated in paragraph 73, proceeds were then traced to Phelps account #8931. Bank records reveal that on or about 1/15/14, one month after Phelps account #0940 was opened, $145,133.83 was transferred from Phelps account #8931 into Phelps account #0940. The account balance for Phelps account #0940 on 1/31/14 was $478,009.79[9].  The transfer of more than

---

[9] Bank records reveal the account balance was $478,009.79 at 1/31/14. Due to the account being an investment account containing numerous equities, your affiant was unable to determine actual balance as of 1/15/14, the date of

$10,000 of proceeds into Phelps account #1940 means that the account was involved in money laundering in violation of 18 U.S.C § 1957 and, therefore, the account balance of $478,009.79 is subject to seizure and forfeiture in Phelps account #1940.

(13)    RCX account #9454

76.    Bank records for account #9454 at Bank of America reflect the account to be held in the name RCX Inc., with an address of 2049 Sykesville, MD.  Ramelmeier and his wife are listed as signers of this account.

77.    As stated above in paragraphs 51-52 and 55, fraud proceeds were traced from JADM account #0919 to Consolidated Fuel Account #0062 then to NGS Div account #9162. Bank records reveal NGS Div account #9162 disbursed a check for $20,000 to RCX Inc. that was deposited into RCX account #9454 on 3/13/13.  The bank balance for RCX account #9454 on 3/13/13, the date of the $20,000 deposit, was $26,839.61, which includes that deposit.  The transfer of more than $10,000 of proceeds into RCX account #9454 means that the account was involved in money laundering in violation of 18 U.S.C § 1957 and, therefore, the account balance on 3/13/13 of $26,839.61 is subject to seizure and forfeiture in RCX account #9454.

(14)    Roger D Parrish account #4163

78.    Bank records for account #4163 at Bank of America reflect the account to be held in the name Roger D Parrish Mem Scholarship Trust, Rolf Ramelmeier Trustee, Mark & Maralyn A Ramelmeier Trustees, with an address of 11438 High Hay Dr., Columbia, MD 21044. Ramelmeier is listed as the lone signer on the account.

the transfer.  However, account records reveal no significant deposits or withdrawals occurring from 1/16/14 to 1/31/14.

79.     As stated above in paragraphs 51 and 52, fraud proceeds were traced to and from JADM account #0919.  Bank records reveal that Roger D Parrish account #4163 received frequent transfers of funds from JADM account #0919. Between July 2011 and July 2014, JADM account #0919 transferred $108,117.55 to Roger D Parrish account #4163.  Therefore, the total amount of proceeds transferred of $108,117.55 is subject to seizure and forfeiture in Roger D Parrish account #4163.

(15)   Equity Assistance account #7546

80.     Bank records for account #7546 at Bank of America reflect the account to be held in the name Equity Assistance, Inc., with an address 2049 Sykesville Rd., Sykesville, MD. Ramelmeier is a signer and listed as President.  Ramelmeier's wife and son are also listed as signers on this account.

81.     As stated above in paragraphs 51-52 and 55, fraud proceeds were traced from JADM account #0919 to Consolidated Fuel Account #0062 then to NGS Div account #9162. Bank records reflect that on 6/11/13, NGS Div account #9162 cut a $660,000 check payable to Equity Assistance Inc that was deposited into Equity Assistance account #7546 that same day. The transfer of more than $10,000 of proceeds into Equity Assistance account #7546 means that the account was involved in money laundering in violation of 18 U.S.C § 1957  and therefore, the total amount of proceeds transferred of $660,000 is subject to seizure and forfeiture in Equity Assistance account #7546.

(16)   Ramelmeier account #7LX-10218

82.     Bank records for account #7LX-10218 at Merrill Lynch reflect the account to be

31

held in the name Rolf Ramelmeier and Maralyn Ramelmeier JTWROS, Pledged to ML Lender, C/O Rolf Ramelmeier, with an address of 2049 Sykesville Rd., Sykesville, MD.

83.     As stated above in paragraphs 51-52 and 55, fraud proceeds were traced from JADM account #0919 to Consolidated Fuel Account #0062 then to NGS Div account #9162. Additionally, as stated in paragraph 57, fraud proceeds were also traced to Ramelmeier account #9115. Bank records reveal that on 10/11/12, a $155,000 check from NGS Div account #9162 was deposited into Ramelmeier account #9115. Five days later, on 10/16/12, $155,000 was transferred from Ramelmeier account #9115 to Ramelmeier account #7LX-10218. The account balance for Ramelmeier account #7LX-10218 on 10/31/12 was $945,950.53[10]. The transfer of more than $10,000 of proceeds into Ramelmeier account #7LX-10218 means that the account was involved in money laundering in violation of 18 U.S.C § 1957 and, therefore, the account balance of $945,950.53 is subject to seizure and forfeiture in Ramelmeier account #7LX-10218.

(17)    Ramelmeier life insurance policy #008003685

84.     Records for Policy #008003685 at The Penn Mutual Life Insurance Company ("Penn Mutual") reflect that Ramelmeier maintains a life insurance policy with Penn Mutual for which he is listed as the insured, owner and payor.

85.     As stated above in paragraphs 51 and 52, fraud proceeds were traced to and from JADM account #0919. Bank records from September 2011 to September 2013 reveal that premium payments totaling $10,037.38 were paid from JADM account #0919 for Ramelmeier policy #008003685. The transfer of $10,037.38 of fraudulent proceeds for Ramelmeier Policy

---

[10] Bank records reveal the account balance was $945,950.53 at 10/31/12. Due to the account being an investment account containing numerous equities, your affiant was unable to determine actual balance as of 10/16/12, the date of the transfer. However, account records reveal no significant deposits or withdrawals occurring from 10/16/12 to 10/31/12.

#008003685 means that the Policy is subject to seizure and forfeiture.

(18)   Deed of Trust for 3421 14th St.

86.     Property records for 3421 14th St., NW, Washington, D.C. reveal that the property was sold on or about 9/11/06 by Equity Assistance Inc. ("Equity Assistance") to Avanti Real Estate Services Inc ("Avanti") for approximately $750,000. That same day, Avanti executed a $600,000 Deed of Trust and Security Agreement with the Bank of Georgetown for 3421 14th St.

87.     As stated above in paragraphs 51-52 and 55, fraud proceeds were traced from JADM account #0919 to Consolidated Fuel Account #0062 then to NGS Div account #9162. Additionally, as described in paragraph 80 above, bank records reflect that on 6/11/13, NGS Div account #9162 cut a $660,000 check payable to Equity Assistance Inc that was deposited into Equity Assistance account #7546 on 6/11/13. Furthermore, bank records reveal a check dated 6/17/13 from Equity Assistance Inc account #7546 payable to Bank of Georgetown for $554,201.60 with the memo line "MORTGAGE NOTE 14TH ST."

88.     On 6/18/13, the Deed of Trust and Security Agreement was transferred from Bank of Georgetown to Equity Assistance Inc. and as such Equity Assistance holds the mortgage on 3421 14th St. The executed Deed of Sale between Avanti and Equity Assistance lists Rolf Ramelmeier as the President of Equity Assistance, Inc. and the executed Assignment of Deed and Trust lists Equity Assistance's address as 2049 Sykesville Rd., Sykesville, MD. The transfer of more than $10,000 of proceeds towards the payment of Deed of Trust for 3421 14th St. means that the Deed of Trust was involved in money laundering in violation of 18 U.S.C § 1957 and the Deed of Trust, therefore, is subject to seizure and forfeiture.

## Civil Forfeiture Complaint to Be Filed Against the Following Real Property

2049 Sykesville Rd.

89.     As described in paragraph 12, 2049 Sykesville Rd was JADM's business address and Ramelmeier's primary residence. The Maryland Department of Assessments and Taxation lists Ramelmeier and his wife as owners of this property.

90.     As stated above in paragraphs 51-52 and 55, fraud proceeds were traced from JADM account #0919 to Consolidated Fuel Account #0062 then to NGS Div account #9162. Additionally, as stated in paragraph 57, fraud proceeds were also traced to Ramelmeier account #9115. Bank records reveal that on 5/19/14, the first business day after Ramelmeier was confronted in person by Northrop Grumman regarding the fraud, $82,626.54 was wired from Ramelmeier account #9115 to Nationstar Mortgage LLC, the holder of the mortgage of 2049 Sykesville Rd.[11] A letter from Nationstar Mortgage, dated 5/28/14, to Howard Clerk Recorder states that loan 0617260435, for 2049 Route 32, Sykesville, MD, had been paid in full. The transfer of more than $10,000 of proceeds towards payment of 2049 Sykesville Rd. means that the property was involved in money laundering in violation of 18 U.S.C § 1957 and the property, therefore, is subject to forfeiture.

1203 Columbia Rd.

91.     Records from the Washington D.C. Office of Tax and Revenue list Ramelmeier as

---

[11] Approximately one month after Ramelmeier was confronted by Northrop Grumman in person, The Falls Lake Group Inc. sold two properties in North Carolina for approximately $350,000. Bank records for BB&T account ending in #0272, reflect that the account is held in the name The Falls Lake Group Inc. with a mailing address of 2049 Sykesville Rd., Sykesville, MD. Ramelmeier is listed as the Executive Vice President and has signature authority on the account.

the owner of 1203 Columbia Rd. Loan records from Ocwen Loan Servicing LLC ("Ocwen") include an Ocwen mortgage account statement for 1203 Columbia Rd., dated 5/6/14, reflecting that the principal balance on the mortgage was $80,878.63.

92. As stated above in paragraphs 51-52 and 55, fraud proceeds were traced from JADM account #0919 to Consolidated Fuel Account #0062 then to NGS Div account #9162. Additionally, as stated in paragraph 57, fraud proceeds were also traced to Ramelmeier account #9115. Bank records reveal that from September 2013 to August 2014, Ramelmeier account #9115 made mortgage payments to Ocwen totaling $12,271.85. The transfer of $12,271.85 of fraudulent proceeds towards the payment of 1203 Columbia Rd. means that the property is subject to forfeiture.


6413 Allview Drive

93. The Maryland Department of Assessments and Taxation lists RCX Inc. as the owner of 6413 Allview Drive, Columbia, MD. Property records reveal that 6413 Allview Drive was purchased by RCX, Inc. on or about 12/6/13 for $325,000.

94. As stated above in paragraphs 51-52 and 55, fraud proceeds were traced from JADM account #0919 to Consolidated Fuel Account #0062 then to NGS Div account #9162. Additionally, as described in paragraphs 57 and 77 above, fraud proceeds were also traced to Ramelmeier account #9115 and RCX account #9454, respectively. Bank records reveal that Ramelmeier account #9115 disbursed a check, dated 11/30/13, in the amount of $60,000 that was deposited on 12/2/13 into RCX Account #9454. One day later, on 12/3/13, $335,386.08 was transferred by wire from RCX account #9454 to Allview Title Group Inc. Based on the timing of these transactions, your affiant believes that this wire transfer was for the purchase of 6413

Allview Drive.  The transfer of more than $10,000 of proceeds towards payment of 6413

Allview Drive means that the property was involved in money laundering in violation of 18

U.S.C § 1957 and the property, therefore, is subject to forfeiture.

## CONCLUSION

95.     Probable cause exists to believe that evidence of the crimes of conspiracy to

commit mail and wire fraud, 18 U.S.C. § 1349; mail fraud, 18 U.S.C. § 1341; wire fraud, 18

U.S.C. § 1343; and money laundering, 18 U.S.C. § § 1956 and 1957, specifically those items set

forth in Attachments B and D, are contained on premises located at 2049 Route 32, Sykesville,

MD 21784 and in e-mail account jadminc@msn.com, hosted by Microsoft. Wherefore, your

affiant requests that  search warrants be issued for the  premises located at 2049 Route 32,

Sykesville, MD 21784 and for the contents and information associated with e-mail account

jadminc@msn.com, hosted by Microsoft.

96.     Probable cause exists to believe that the SUBJECT PROPERTY, as more fully

described in paragraphs 51 through 94 of this Affidavit, constitutes evidence and proceeds of

conspiracy to commit mail and wire fraud, mail fraud, wire fraud, and money laundering in

violation of 18 U.S.C. § § 1341, 1343, 1349, 1956 and 1957, and is subject to seizure pursuant to

28 U.S.C § 2461(c), 18 U.S.C. § 981(a)(l)(A) & § 981(a)(1)(C), 18 U.S.C. § 1956(c)(7), 18

U.S.C. § 1961(1), 21 U.S.C. § 853, and 18 U.S.C. § 982(a)(1).Wherefore, your affiant requests

36

**14-2796TJS** thru **14-2815TJS**

that seizure warrants be issued for the SUBJECT PROPERTY up to the amounts set forth in

paragraphs 51 through 88.

_____
Special Agent Jason C. Bender
Federal Bureau of Investigation

Sworn before me this 3rd day of December, 2014, at 11:43am hours.

_____
Timothy J. Sullivan
United States Magistrate Judge

## ATTACHMENT A

## DESCRIPTION OF PROPERTY TO BE SEARCHED

The Property is known as 2049 Route 32, Sykesville, Maryland 21784. The Property is further described as a two story, primarily brown and cream colored, residence with an attached three car garage. The front entry to 2049 consists of double-glass doors with a brown frame. At the start of the driveway of the residence, along Route 32, is a mailbox with the number "2049" in black, attached to a piece of wood with the words "The Ramelmeier's" etched into the wood. Further down the driveway is a wooden sign reading "Rolf and Maralyn welcome you to Dog's Run" with a white sign below it with the number "2049" in black. In the front yard, to the right of the residence is another white sign with the number "2049" in black.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Based upon the facts set forth in the affidavit, your Affiant submits that there is probable cause to believe the following items, which are fruits, instrumentalities and evidence of violations of 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 1956 (money laundering), and 1957 (money laundering),are located at **2049 Route 32, Sykesville, MD 21784**, including the following items:

1. Any records related to **ROLF RAMELMEIER, RICHARD SHOE, MARALYN RAMELMEIER, MARK RAMELMEIER** and any other persons relating to the conspiracy to defraud Northrop Grumman Corporation (and/or any of its subsidiaries to include, but not limited to, Northrop Grumman Systems Corporation), UGI Energy Services ("UGI") or Potomac Electric Power Company ("PEPCO") and any records of interactions or communications relating to these individuals and businesses.

2. Financial records related to **ROLF RAMELMEIER, RICHARD SHOE** and any of their known business entities or nominees:

   > JADM, Inc.
   > Northrop Group
   > Northrop Group Sensor(s) Division
   > Northrop Sensor(s) Division
   > North-South Development Corporation
   > North South Development Corporation of Nash County
   > R&R Cycle Sales, Inc.
   > Roanoke Valley Motor Sports
   > Ramel Corporation
   > S&R Properties
   > T&R Properties
   > Phelps Associates
   > The Falls Lake Group, Inc.
   > Consolidated Fuel Atlantic of Maryland Inc
   > Consolidated Fuel Atlantic Inc.
   > Equity Assistance Inc.
   > RCX, Inc.
   > RRA Select Auto, Inc.
   > Select Auto Sales

**14-2796TJS - 14-2815TJS**

The financial records are to include:

      a.) Books, records, ledgers, journals, contracts, agreements, statements, receipts, invoices, billings, financial statements, balance sheets, notes and work papers;

      b.) All correspondence, letters, memorandum, applications, powers of attorney, and listings, which contain financial information, such as income, expenses, assets, liabilities, transfer of money;

      c.) Bank and other financial institution records, including bank statements, passbooks, deposit slips, withdrawal slips, cancelled checks, bank receipts, bank checks, money order receipts, wire transfers, credit and debit memos, and safe deposit keys and records;

      d.) Bank and other financial institution records, showing acquisition, conversion, movement, secreting, transfer and disbursement of United States and foreign currency;

      e.) Records of loans or letters of credit including contracts, escrow agreements, mortgages, notes, agreements, applications, payments, and financial statements;

      f.) Credit and debit card records, including records of purchases, withdrawals, deposits and cash advances made with credit and debit cards, and including statements and receipts;

      g.) Records of purchase and sale of assets, investments, and insurance policies;

      h.) Records of real estate transactions including contracts, deeds, agreements, settlement sheets, records of loans, mortgages, applications, and records of payments;

      i.) Records of personal living expenses;

      j.) Records of forming and operating corporations, partnerships, trusts, limited liability companies, associations, businesses, and/or any other entities;

**14-2796TJS-14-2815TJS**

k.) Employment records and personnel files, including employee lists, names, and addresses; duties of employees and employee applications; Forms W-2, 1099, W-4, employment tax returns, ledgers, payroll journals, payroll records and correspondence with employees;

l.) Blank and completed federal and state income tax returns, schedules, forms, instructions, Forms 8453, U.S. Individual Income Tax Declaration for Electronic Filing;

m.) All records and financial documents related to tax liabilities, filing status, dependants, income earned, adjustments to income, expenses incurred, deductions, charitable contributions, employee business expenses, mileage logs, business income/receipts, business expenses, credits, assets, liabilities, tax payments, and tax refunds.

3. Appointments, books, diaries, calendars, and/or any other documents containing information regarding appointments, as well as any correspondence.

4. Safe deposit records and/or keys, as well as storage facility records and/or keys.

5. Electronic devices which are capable of storing, analyzing, creating, displaying, converting or transmitting electronic or magnetic computer impulses or data that is contained in this warrant. These devices include:

- Computers, computer components, computer peripherals, modems, monitors, printers, potters, copiers, fax machines, optical scanners, external hard drives, servers and other computer related devices;
- Instructions or programs stored in the form of electronic or magnetic media which are capable of being interpreted by a computer or related components. The items to be seized include operating systems, application software, utility programs, and other programs of software used to communicate with computer hardware or peripherals;
- Information and/or data stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer or with the aid of computer related equipment. This media includes floppy disks, diskettes, fixed hard disks, removable hard disk cartridges, flash "thumb" drives and similar devices, tapes, video cassettes, and any other media which is capable of storing magnetic coding;
- Digital cameras and digital camera storage cards;
- Cellular telephones, PDAs, and other smart phones and their storage cards;

- Passwords, encryption keys, and other access devices that may be necessary to access the above devices or media; and/or
- Written or printed material which provides instructions or examples concerning the operation of any of the above devices, media, or software.

**Search Protocol**

For any of the items described above in Sections 1-5 which are stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer with the aid of computer-related equipment, including floppy diskettes, fixed hard disks, or removable hard disk cartridges, software or memory in any form, the search procedure of the electronic data contained in computer operating software or memory devices shall include the following techniques **which shall be used to minimize the risk that those conducting the search will view information not within the scope of the warrant**:

(a)  surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains and opening a drawer believed to contain pertinent files);

(b)  "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

(c)  "scanning" storage areas to discover and possible recover recently deleted files;

(d)  "scanning"  storage areas for deliberately hidden files; or

(e)  performing key word **or other search and retrieval** searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

If after performing these procedures, the records, directories, files or storage areas do not reveal evidence of a wire fraud conspiracy or other criminal activity, the further search of that particular record, directory, file or storage area, shall cease.

**14-2796TJS - 14-2815TJS**

**ATTACHMENT C**
**Property to Be Searched**

This warrant applies to the contents of and information associated with the e-mail account **jadminc@msn.com** that is stored at premises owned, maintained, controlled, or operated by Microsoft, Inc., a company located at One Microsoft Way, Redmond, WA 98052

### ATTACHMENT D
**Particular Things to be Seized**

I.  **Information to be disclosed by Microsoft, Inc.**

To the extent that the information described in Attachment C is within the possession, custody, or control of Microsoft, Inc., including any e-mails, spreadsheets, records, files, logs, or information that have been deleted but are still available to Microsoft, Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Microsoft, Inc. is required to disclose the following information to the government for each account or identifier listed in Attachment C, only for the time period from and including December 10, 2001 to the present:

1.  The contents of all e-mails associated with the account, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

2.  All records or other information regarding the identification of the account, to include the user's full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

3.  All records or other information stored at any time by an individual using the account, including spreadsheets, address books, contact and buddy lists, calendar data, pictures, and files; and

4.      All records pertaining to communications between Microsoft, Inc. and any person regarding the account, including contacts with support services and records of actions taken.


## II.     Information to be seized by the government

1.      All information described above in Section I that constitutes evidence of violations of 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 1956 (money laundering), and 1957 (money laundering), or property designed for use, intended for use, or used in committing said crimes.

2.      All information relating to who created, used, or communicated with the account, including records about their identities and whereabouts.

**14-2796 TJS — 14-2815 TJS**

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the

laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information

contained in this declaration is true and correct. I am employed by Microsoft, Inc., and my

official title is _____. I am a custodian of records for Microsoft,

Inc. I state that each of the records attached hereto is the original record or a true duplicate of the

original record in the custody of Microsoft, Inc., and that I am the custodian of the attached

records consisting of _____ (pages/CDs/kilobytes). I further state that:

    a.     all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth, by, or from information transmitted by, a person with

knowledge of those matters;

    b.     such records were kept in the ordinary course of a regularly conducted business

activity of Microsoft, Inc.; and

    c.     such records were made by Microsoft, Inc. as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal

Rules of Evidence.


_____       _____

Date                          Signature